UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| TERRELL STATON, | : | No. 3:22-cv-00854 (VLB) |
|    Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| LAMONT, et al., | : | |
|    Defendants. | : | November 28, 2022 |

## INITIAL REVIEW ORDER

Plaintiff, Terrell Staton, is incarcerated at Osborn Correctional Institution within the Connecticut Department of Correction ("DOC"). He has filed a civil rights complaint alleging constitutional tort claims against a multitude of defendants. Having carefully reviewed the complaint, the Court concludes that Mr. Staton has not pled any plausible § 1983 or *Bivens* causes of action. Accordingly, the Court DISMISSES the complaint.

I.    THE COMPLAINT

Mr. Staton has filed an 84-page complaint naming 44 defendants. Compl., Dkt. No. 1 at 1-84.[1] But the majority of Mr. Staton's complaint is comprised of attachments. *Id.* at 17-84. The narrative portions of the complaint are relatively brief. *Id.* at 4-5, 7-8, 13-16. The following facts are alleged in the amended complaint.

---

[1] Mr. Stanton lists different sets of defendants on pages 1 and 12 of his complaint.

### *Placement in RHU and Dismissal of Lawsuit*

On December 15, 2020, while incarcerated at Robinson Correctional Institution, Mr. Staton presented Officer Reese (not one of the named defendants) with an "emergency motion" that needed to be e-filed in a federal civil rights lawsuit that Mr. Staton was then-litigating. *Id.* at 13, ¶ 1. The next day, Officer Reese returned the motion to Mr. Staton, and explained that Officer Such had refused to file it. *Id.*, ¶ 2. Mr. Staton then complained about the non-filing of his motion to a "plain clothed" person whom he thought to be a DOC official. *Id.*, ¶ 3.

Upon noticing Mr. Staton's act of complaining, Officer Bowen yelled at him to, "Turn the f*ck around and sit the f*ck down." *Id.*, ¶ 4. Mr. Staton appears to allege that this outburst of profanity was recorded on a telephone conversation occurring nearby. *Id.* at 5, 13, ¶ 4. Mr. Staton asserts that Lieutenant Brown, Officer Clark, and another DOC official would, eight months later, "libelously" suppress a transcript of this telephone recording to "manipulate" due process at his parole hearing. *Id.* at 5.[2]

After yelling at Mr. Staton, Officer Bowen asked Captain Rios to place Mr. Staton in handcuffs. *Id.* at 13, ¶ 5. Captain Rios complied with this request, with assistance from two other correctional officers. *Id.* As Mr. Staton was escorted to

---

[2] Mr. Staton's pleading is, at times, exceedingly difficult to follow. Thus, the Court's interpretation of the complaint may not be as Mr. Staton intended.

2

a restrictive housing unit (RHU), Captain Rios grabbed his unfiled motion. *Id.* at 14, ¶ 6. She then e-filed the motion on Mr. Staton's behalf. *Id.*

Officer Bowen immediately prepared a purportedly "libelous" affidavit as part of a disciplinary report filed against Mr. Staton. *Id.* at 14, 15-16, ¶¶ 7, 14. Two days later, Captain Rios submitted a "supporting report" that Mr. Staton alleges to have been prepared for the purpose of "rationalizing" Officer Bowen's use of profanity and libel. *Id.* at 14, ¶ 7. The complaint never specifies what Officer Bowen or Captain Rios asserted in their respective reports. A "disciplinary ticket" arising from Mr. Staton's interaction with Officer Bowen was, ultimately, upheld. *Id.* at 5.

Mr. Staton remained in RHU from December 16, 2020, to December 31, 2020. *Id.* at 14, ¶ 10. During this time, Mr. Staton reports that he was unable to pay a filing fee, or file a motion to proceed *in forma pauperis*, in his previously mentioned federal lawsuit. *Id.*, ¶ 8. Mr. Staton faults Federal Magistrate Judge Garfinkel for having previously noted that he was required to pay a filing fee or apply to proceed *in forma pauperis*. *Id.*, 14-15, ¶¶ 9, 12.[3] According to Mr. Staton, Judge Garfinkel, Officer Such, and other unnamed defendants were involved in a conspiracy to limit

---

[3] Court records indicate that Mr. Staton filed his complaint without paying a filing fee or filing an *in forma pauperis* motion. *See Staton v. Lamont*, 3:20-cv-1751 (SRU), Dkt. No. 5. Judge Garfinkel noted this on November 23, 2020, and advised Mr. Staton that his lawsuit would be dismissed if the insufficiency was not corrected by December 14, 2020. *See Id.* The "emergency motion" that Mr. Staton endeavored to file on December 15, 2020, was completely unrelated to Judge Garfinkel's notice of insufficiency. *See id.*, Dkt. No. 6.

3

his access to the courts.  *Id.* at 14, ¶ 9.  Eventually, Judge Underhill dismissed Mr. Staton's lawsuit due to his failure to pay a filing fee or apply to proceed *in forma pauperis*.  *Id.* at 14-15, ¶ 10.

*Parole Denial*

On August 30, 2021, a parole board denied Mr. Staton's release from prison.  *Id.* at 15, ¶ 13.  Prior to their denial of parole, the parole board reviewed the disciplinary report that Officer Bowen filed in December of 2020.  *Id.* at 5.  Mr. Staton asserts that Officers Popec and Nothe improperly influenced the decision of the parole board as retaliation for his act of naming them as defendants in the previously noted lawsuit dismissed by Judge Underhill.  *Id.* at 4-5.  According to Mr. Staton, Lieutenant Oullette also improperly influenced the parole board's decision.  *Id.*, at 5.

*Tuberculosis Status*

Mr. Staton asserts that he has latent tuberculosis (TB), and that this diagnosis has subjected him to discrimination.  *Id.* at 16, ¶ 16.  Twenty days following his parole hearing, Mr. Staton was quarantined for a period of 120 days.  *Id.*  Mr. Staton appears to draw a connection between this quarantine and the discrimination that he purportedly faces due to his TB status.  *Id.*  In addition, Mr. Staton faults DOC officials for neglecting to consider his latent TB status when considering his qualification for discretionary release during the COVID-19 pandemic.  *Id.* at 5.

### III.     STANDARD OF REVIEW

Under 28 U.S.C. § 1915A(b), the Court must review prisoner civil complaints against governmental actors and "dismiss . . . any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief." *Id.*; *see also Liner v. Goord*, 196 F.3d 132, 134 n.1 (2d Cir. 1999) (explaining that, under the Prisoner Litigation Reform Act, *sua sponte* dismissal of frivolous prisoner complaints is mandatory); *Tapia-Ortiz v. Winter*, 185 F.3d 8, 11 (2d Cir. 1999) ("Section 1915A requires that a district court screen a civil complaint brough by a prisoner against a governmental entity or its agents and dismiss the complaint *sua sponte* if, *inter alia*, the complaint is 'frivolous, malicious, or fails to state a claim upon which relief may be granted.'") (quoting 28 U.S.C. § 1915A).

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks omitted).  A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level" and assert a cause of action with enough heft to show entitlement to relief and "enough facts to state a claim to relief that is plausible on its face." *Id.* at 555, 570. A claim is facially plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

5

Although the Federal Rules of Civil Procedure do not require "detailed factual allegations," a complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Twombly*, 550 U.S. at 555-57. Plausibility at the pleading stage is nonetheless distinct from probability, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the claim] is improbable, and . . . recovery is very remote and unlikely." *Id*. at 556 (internal quotation marks omitted).

Complaints filed by *pro se* plaintiffs "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (internal quotation marks omitted); *see also Tracy v. Freshwater*, 623 F. 3d 90, 101-02 (2d Cir. 2010) (discussing the "special solicitude" courts afford *pro se* litigants).

IV.   DISCUSSION

Section 1983 of Title 42 of the United States Code creates a private federal cause of action against any person, acting under color of state law, who deprives an individual of their federally protected rights. *Rehberg v. Paulk*, 566 U.S. 356, 361 (2012).  And, in some circumstances, the federal judiciary has recognized an implied cause of action for damages against federal officials alleged to have violated an individual's federal constitutional rights. *Arar v. Ashcroft*, 585 F.3d 559, 571 (2d Cir. 2009).  These claims are often called "*Bivens*" claims, in reference to the U.S. Supreme Court opinion first recognizing such a cause of action.  *See*

6

*Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

In this case, Mr. Staton primarily alleges that state actors violated his federal constitutional rights. But he also brings claims against two federal judges. Thus, this case includes § 1983 and *Bivens* claims. In addition to these constitutional tort claims, Mr. Staton also appears to bring state tort claims against the defendants.

A.   **Official Capacity Claims**

Mr. Staton brings claims against the defendants named to this suit in their individual and official capacities. Dkt. No. 1 at 1-2. However, sovereign immunity principles preclude tort plaintiffs from suing state or federal officials in their official capacities for an award of monetary damages. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (considering § 1983 claims); *see also Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 510 (2d Cir. 1994) (considering *Bivens* claims). Plaintiffs may sue state and federal officials in their official capacities in some contexts, but only to the extent that they seek non-monetary, injunctive relief. *See Will*, 491 U.S. at 71 n.10; *see also Garmhausen v. Holder*, 757 F. Supp. 2d 123, 135 (E.D.N.Y. 2010) ("Sovereign immunity is therefore no bar to claims for prospective relief that seek to compel [federal] governmental defendants to conform their official conduct to a legal mandate.")

In his complaint, Mr. Staton exclusively requests monetary relief (compensatory damages, punitive damages, and attorney fees). Dkt. No. 1 at 5.

Because Mr. Staton requests no injunctive relief, his official capacity claims are dismissed.  See 28 U.S.C. § 1915A(b)(2).

**B.     Severance**

Under the Federal Rules of Civil procedure, joinder of multiple defendants is only permitted in an action if "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions and occurrences, and any question of law or fact common to all defendants will arise in the action." See Fed. R. Civ. P. 20(a)(2). When initially screening claims in a prisoner's civil rights complaint, a district court may sever claims as warranted. See Fed. R. Civ. P. 21; see also Jusino v. Quiros, 3:21-cv-620 (SRU), 2021 WL 5111908, at *4 (D. Conn. Nov. 3, 2021).

Here, Mr. Staton brings claims arising from three distinct sets of circumstances.  His first group of claims relate to events occurring in 2020 that resulted in RHU placement and the dismissal of a lawsuit.  The second group of claims relate to an adverse August 31, 2021, parole board decision.  And the third group of claims relate to official decision-making that either was motivated by, or failed to take into account, Mr. Staton's latent TB diagnosis.

The denial of Mr. Staton's parole is somewhat related to events occurring in December of 2020, because the parole board appears to have considered a disciplinary report initially created to justify his placement in RHU.  Dkt. No. 1 at 5. However, Mr. Staton's RHU placement occurred eight months prior to the denial of his parole.  And, to the court's best discernment, the events occurring in December

8

of 2020 are not otherwise related to Mr. Staton's August 31, 2021 parole board proceedings. Furthermore, the Court cannot discern how Mr. Staton's TB status is related to his claims arising from events occurring in December of 2020, or the subsequent denial of his parole. Thus, the Court concludes that Mr. Staton is attempting to litigate three lawsuits worth of claims in this single case.

Of the three sets of claims brought in the complaint, those pertaining to his RHU placement and the dismissal of his lawsuit are pled in the greatest detail. Thus, the Court will permit Mr. Staton to proceed with these claims in this case. Mr. Staton's remaining claims—those pertaining to the denial of his parole and his TB status—are severed and dismissed from this action. This dismissal is without prejudice to Mr. Staton's right to bring these claims in separately filed cases.

C. Personal Involvement

Because the doctrine of *respondeat superior* does not apply to § 1983 or *Bivens* claims, Mr. Staton must allege facts establishing that the defendants were "personally involved" in alleged deprivations of his constitutional rights. *Thomas v. Ashcroft*, 470 F.3d 491, 496 (2d Cir. 2006); *Wright v. Smith*, 21 P.3d 496, 501 (1994). Specifically, Mr. Staton must "plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (quoting *Iqbal*, 556 U.S. at 676).

Mr. Staton has named a total of 44 defendants to this lawsuit. Dkt. No. 1 at 1, 12. But the vast majority of these named defendants are not mentioned in the

9

account of events relating to his placement in RHU or the dismissal of his lawsuit. The only defendants whom Mr. Staton identifies by name as having any direct role in these events are Officer Such, Officer Bowen, Captain Rios, Judge Garfinkle, and Judge Underhill. Thus, all defendants, besides those just listed, are dismissed from this action due to their lack of personal involvement. See 28 U.S.C. § 1915A(b)(1).

D. Judicial Immunity

"[G]enerally, a judge is immune from a suit for money damages." *Mireles v. Waco*, 502 U.S. 9, 9 (1991). This immunity is absolute to the extent that a plaintiff challenges judicial acts taken with at least some suggestion of jurisdiction. *Id.* at 11-12.

Here, Mr. Staton brings *Bivens* claims against Judges Garfinkle and Underhill because they issued notices and rulings that resulted in the dismissal of his lawsuit. Because Judges Garfinkle and Underhill are absolutely immune from suit to such claims, Mr. Staton's claims against them are dismissed. See 28 U.S.C. § 1915A(b)(1).[4]

---

[4] Mr. Staton asserts that Judge Garfinkle notified him of a filing fee requirement for his lawsuit in bad faith and in furtherance of a conspiracy to deny him access to the courts. Dkt. No. 1 at 14-15, ¶¶ 9, 12. This claim is facially implausible and conclusory in nature. And, in any event, judicial immunity "is not overcome by allegations of bad faith or malice." *Mireles v. Waco*, 502 U.S. 9, 11 (1991).

### E. Constitutional Tort Claims

Mr. Staton's complaint includes a scattershot list of claims purportedly brought against the defendants. Dkt. No. 1 at 5. But these claims are not meaningfully explained and do not obviously apply to the alleged facts. Thus, the Court looks to the substance of Mr. Staton's pleading to determine what claims are fairly implicated by the complaint.

#### 1. Access to the Courts

The First Amendment to the United States Constitution guarantees prisoners of "the right of access to the courts." *Lewis v. Casey*, 518 U.S. 343, 350 (1996). Accordingly, prison officials are prohibited from, "actively interfering with inmate's attempts to prepare legal documents or file them . . . ." *Id.* (internal citation omitted).

Mr. Staton's pleading suggests that he wishes to bring two access to the courts claims. The first claim relates to Officer Such's alleged refusal to file an "emergency motion" on Mr. Staton's behalf. Dkt. No. 1 at 13, ¶ 3. The second claim relates to a contention that prison officials prevented Mr. Staton from paying a filing fee or filing an *in forma pauperis* motion while he was placed in RHU, thus resulting in the dismissal of a lawsuit. *Id.* at 14-15, ¶¶ 8, 10.

Plaintiff's first access to the courts claim is untenable, because meritorious court access claims require a showing of "actual injury." *Lewis*, 518 U.S. at 351-52. Specifically, a plaintiff must allege that a prisoner official "actually interfered with his access to the courts or prejudiced an existing action." *Tafari v. McCarthy*,

11

714 F. Supp. 2d 317 (N.D.N.Y. 2010).  Here, Mr. Staton concedes that his "emergency motion" was filed by Captain Rios, at most, one day following Officer Such's alleged refusal to file the motion. Dkt. No. 1 at 13-14, ¶¶ 1-3, 6.[5] Since Mr. Staton has not alleged that this slight filing delay cause him prejudice in the litigation of his lawsuit, he has not stated a viable access to the courts claim.

Mr. Staton's second access to the courts claim, initially, appears to be on sounder footing.  If prison officials did, in fact, prevent Mr. Staton from paying a filing fee or filing an *in forma pauperis* motion while he was placed in RHU, and this resulted in the dismissal of his lawsuit, then Mr. Staton could have a meritorious access to the courts claim.  However, Mr. Staton's pleading is fatally undermined by the Court's ability to take judicial notice of its own records.  *See Rothman v. Gregor*, 220 F.3d 81 (2d. Cir. 2000) (taking judicial notice of a pleading in another lawsuit); *United States v. Currency in Total Amount of 2,223.40*, 157 F. Supp. 300, 303 (N.D.N.Y. 1957) ("[T]here seems to be no doubt as to the power of the court to take judicial notice of its own records in the same or in an interrelated case.")

Mr. Staton specifically alleges that he was placed in RHU from December 16, 2020, to December 31, 2020. Dkt. No. 1 at 14-15, ¶ 10.  While Mr. Staton claims to

---

[5] **Plaintiff specifically alleges that Officer Such refused to file his "emergency motion on December 15th or 16th of 2020. Dkt. No. 1 at 13, ¶¶ 1-3.  However, court records indicate that Mr. Staton's "emergency motion" was filed on December 15, 2020.  *See Staton v. Lamont*, 20-cv-1751 (SRU), Dkt. No. 6.  This suggests that Officer Such may have actually filed Mr. Staton's motion when requested.  Alternatively, Mr. Staton's reporting of dates may be slightly inaccurate.**

have been unable to pay a filing fee or file an *in forma pauperis* motion during this period, court records show that Mr. Staton successfully filed five motions unrelated to his unremitted filing fee while placed in RHU.  See *Staton v. Lamont*, 20-cv-1751 (SRU), Dkt. Nos. 7-8, 10-12.  Thus, Mr. Staton cannot plausibly contend that he was unable to file motions in the District of Connecticut while he was placed in RHU.[6]

To the extent that Mr. Staton's claims that he was prevented specifically from filing an *in forma pauperis* motion while placed in RHU, his pleading would still fail for two reasons.  First, Judge Underhill did not dismiss Mr. Staton's lawsuit until January 19, 2021.  See *Id.*, Dkt. No. 26.  This means that Mr. Staton had 19 days from the date of his release from RHU to pay a filing fee or move to proceed *in forma pauperis*.  Second, Judge Underhill dismissed Mr. Staton's suit *without prejudice*, and explicitly permitted Mr. Staton to reopen his case by filing a motion and paying the filing fee or filing an additional motion to proceed *in forma pauperis*

---

[6] Like all parties making representations to the Court, Mr. Staton has a duty to only assert facts in which he has a good faith belief have evidentiary support or will likely have evidentiary support after reasonable opportunity for further investigation or discovery.  Fed. R. Civ. P. 11(b)(2).  Mr. Staton knew of this requirement as he certified to complying with this rule in his complaint.  Compl., 11.  However, the facts alleged relating to his access to the court claim are patently false as discussed above.  Mr. Staton is warned that continuing to set forth knowingly false factual contentions may result in sanctions under Rule 11 of the Federal Rules of Civil Procedure.  Continual dishonesty to the Court may justify limiting his ability to file lawsuits and pleadings without leave of the Court.  See *Shafii v. British Airways, PLC*, 83 F.3d 566, 571 (2d Cir. 1996) ("A district court may, in its discretion, impose sanctions against litigants who abuse the judicial process.").

13

within 20 days of the Court's dismissal order. *Id.* Mr. Staton did not, however, take appropriate steps to reopen his case.[7]

In sum, Officer Such, at most, delayed the filing of a motion by a single day. And Mr. Staton had ample opportunities to pay a filing fee or move to proceed *in forma pauperis* both during and after his RHU placement. Thus, Mr. Staton's access to the courts claims lack debatable merit. Those claims are, accordingly, dismissed. *See* 28 U.S.C. § 1915A(b)(1).

### 2. False Misbehavior Reports

Mr. Staton asserts that Officer Bowen submitted a "libelous" affidavit to initiate disciplinary proceedings against him. Dkt. No. 1 at 14, ¶ 7. In addition, he contends that Captain Rios submitted a supplemental report to "rationalize" Officer Bowen's false affidavit. *Id.*

The Court construes Mr. Staton's pleading as alleging that his constitutional rights were violated through the filing of false misbehavior reports. However, "a prison inmate has no general constitutional right to be free from being falsely accused in a misbehavior report." *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir.

---

[7] Mr. Staton did, eventually, file motions to reopen his case. *Staton v. Lamont*, 20-cv-1751 (SRU), Dkt. Nos. 41-42. He also, eventually, paid $23 of his case's $400 filing fee. But this all happened well-beyond the 20-day deadline imposed by Judge Underhill's dismissal order. *Id.* Furthermore, Mr. Staton never filed a motion to proceed *in forma pauperis*. *See Id.*, Order Denying Motions to Reopen Case, Dkt. No. 44.

1997). Accordingly, Mr. Staton's false misbehavior report claims are dismissed. *See* 28 U.S.C. § 1915A(b)(1).

### 3. Use of Profanity

Mr. Staton claims that Officer Bowen yelled obscenities at him while he was complaining to another prison officer. Dkt. No. 1 at 13, ¶ 4. It appears that Mr. Staton may wish to bring a § 1983 claim related to this conduct. But, "[a]bsent physical injury, verbal threats and abuse are insufficient to support a constitutional violation." *Tafari*, 714 F. Supp. 2d at 365. Because Mr. Staton has not alleged any injury resulting from Officer Bowen's verbal abuse, he has not plausibly asserted a violation of his constitutional rights. Accordingly, any claims related to Officer Bowen's use of profanity are dismissed. *See* 28 U.S.C. § 1915A(b)(1).

### 4. Excessive Force

Mr. Staton complains of Captain Rios' "use of force," thus suggesting an intent to bring an Eighth Amendment excessive force claim against her. Dkt. No. 1 at 5. But, in his account of events, the only "force" that Mr. Staton attributes to Captain Rios is her act of placing him in handcuffs. *Id.* at 13, ¶ 5. And a prison official's mere application of handcuffs upon an inmate does not offend the Eighth Amendment. *Burroughs v. Petrone*, 138 F. Supp. 3d 182, 213 (N.D.N.Y. 2015). Because Mr. Staton has not alleged that his placement in handcuffs was painful or protracted, he has not pled a plausible excessive force claim. *See id.* ("In the absence of any facts alleging any permanent injury as a result of handcuffing, plaintiff's excessive force claims … fail to state a cause of action under § 1983.").

Accordingly, the excessive force claim against Captain Rios, to the extent Mr. Staton intended to bring it, is dismissed. See 28 U.S.C. § 1915A(b)(1).

### 5. Conclusion

It is difficult to discern the precise constitutional claims that Mr. Staton intended to bring against the defendants. But, having thoroughly reviewed the complaint, the Court concludes that Mr. Staton has not plausibly pled any violations of his constitutional rights.

### E. Supplemental Jurisdiction

Throughout his complaint, Mr. Staton asserts that Officer Bowen and Captain Rios engaged in "libelous" and "defaming" conduct. Dkt. No. 1 at 5, 13-16, ¶¶ 5, 7, 14. This suggests that Mr. Staton wishes to bring a defamation claim under Connecticut state law. See Gleason v. Smolinski, 319 Conn. 394, 430-31 (2015) (noting the elements of the tort of defamation in the state of Connecticut). But, having dismissed all of Mr. Staton's federal claims, it would be inappropriate for the Court to exercise jurisdiction over state tort claims. See Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims."). Thus, the Court declines to excise supplemental jurisdiction over any state law claims that Mr. Staton may have intended to bring in this case.

### V. CONCLUSION

Mr. Staton's claims relating to the denial of his parole and his TB status are severed and dismissed from this action <u>without prejudice</u>.  All remaining claims are dismissed <u>with prejudice</u> as the court finds that leave to amend would be futile. The Clerk of the Court is directed to close this case.

SO ORDERED.

Dated at Hartford, Connecticut this 28th day of November, 2022.

        /s/
Vanessa L. Bryant
United States District Judge